UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY POPPENS and BRYAN PALONIS, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No.: 1:23-cv-00258 |
| WELLS FARGO BANK, N.A., | ) ) ) |
| Defendant. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Timothy Poppens ("Plaintiff Poppens") and Bryan Palonis ("Plaintiff Palonis") (collectively, "Plaintiffs") bring this action against Wells Fargo Bank, N.A. ("Wells Fargo," "Company," or "Defendant"), and state as follows:

## INTRODUCTION

1. Plaintiffs are both former employees of Defendant. Plaintiffs bring this action against Defendant for violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C.S. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.S. § 2000e *et seq.*

## PARTIES

2. Plaintiff Poppens resides in Allen County, Indiana.

3. Plaintiff Palonis resides in Porter County, Indiana.

4. At all times relevant, Plaintiffs were employees as defined by the Age Discrimination in Employment Act ("ADEA"), as amended, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

5. At all times relevant, Wells Fargo was an employer as defined by the ADEA and Title VII.

6. According to information maintained by the Indiana Secretary of State, Wells Fargo is a Foreign Financial Institution and Wells Fargo's registered agent is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

7. Wells Fargo does business throughout the state of Indiana.

## JURISDICTION AND VENUE

8. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331.

9. The alleged discriminatory acts were committed within the jurisdiction of the United States District Court for the Northern District of Indiana. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

## ADMINISTRATIVE EXHAUSTION

10. Plaintiff Poppens exhausted all of the administrative proceedings available to him by timely filing a Charge of Discrimination on the basis of age and race with the U.S. Equal Employment Opportunity Commission (the "EEOC").

11. Plaintiff Palonis exhausted all of the administrative proceedings available to him by timely filing a Charge of Discrimination on the basis of age and race with the EEOC.

12. On November 16, 2022, Plaintiff Poppens filed EEOC Charge No.: 470-2023-00741.

13. On March 27, 2023, the EEOC issued a Dismissal and Notice of Rights to Plaintiff Poppens. A true and correct copy of the Dismissal and Notice of Rights is attached hereto as **Exhibit A**.

14.     Plaintiff Poppens is initiating this lawsuit within ninety (90) days of his receipt of the EEOC Dismissal and Notice of Rights.

15.     On November 11, 2022, Plaintiff Palonis filed EEOC Charge No.: 470-2023-00816.

16.     On June 23, 2023, the EEOC issued a Notice of Right to Sue to Plaintiff Palonis. A true and correct copy of the Notice of Right to Sue is attached hereto as **Exhibit B**.

17.     Plaintiff Palonis is initiating this lawsuit within ninety (90) days of his receipt of the Notice of Right to Sue.

## GENERAL FACTUAL ALLEGATIONS

18.     Plaintiff Poppens is a sixty-four (64) year old Caucasian.

19.     Plaintiff Poppens worked for Wells Fargo and their legacy companies for thirty-three (33) years in a number of leadership roles.

20.     Up until March 2022, Plaintiff Poppens had the role of Market Leader for the Northern Indiana Market for Wells Fargo Advisors.

21.     At that time, Gerry Berg ("Berg") (Caucasian over the age of sixty) was the Market Leader for the Southern Indiana Market for Wells Fargo Advisors.

22.     In February 2022, Plaintiff Poppens received a call from his direct supervisor, Kent Caldwell-Meeks ("Caldwell-Meeks") (substantially younger and African American), the Midwest Divisional Leader for Wells Fargo Advisors, who informed Plaintiff Poppens that Wells Fargo decided to combine the two Indiana markets and appoint one Market Leader over the entire state of Indiana.

23.     Caldwell-Meeks told Plaintiff Poppens that the Company was going to "package him out" of his role as the Market Leader of the Northern Indiana Market.

24. Plaintiff Poppens thought this was odd because Company practice, referred to as the "MAPPING policy", required the role be offered exclusively to either Berg or Plaintiff Poppens.

25. The MAPPING policy allowed the professionals impacted by a consolidation to compete for a single role with the successful professional assuming the new role and the other professionals being offered a compensation package.

26. Both Berg and Plaintiff Poppens specifically "mapped" to the new role.

27. At that time, Berg was on medical leave, so according to Company practice, Plaintiff Poppens should have been offered the new role.

28. During the call, Caldwell-Meeks asked Plaintiff Poppens how he felt about an African American being placed in the new role.

29. During the February 2022 conversation, Plaintiff Poppens advised Caldwell-Meeks repeatedly that he still wanted to work for several more years.

30. Plaintiff Poppens asked Caldwell-Meeks if Wells Fargo would be willing to provide him a "step-down" package, which would allow Plaintiff Poppens to continue working in a lesser role.

31. Caldwell-Meeks seemed both surprised and unhappy about the prospect of a "step-down" package for Plaintiff Poppens and abruptly ended the telephone call.

32. Ultimately the Company placed Plaintiff Poppens in the role of Branch Manager of the Fort Wayne, Indiana Branch of Wells Fargo Advisors.

33. Plaintiff Poppens was never given the opportunity to apply for the statewide Market Leader role because the position was never posted. Additionally, Plaintiff Poppens was not notified

of the position until his call with Caldwell-Meeks who clearly told Plaintiff Poppens that he was not being considered for the role.

34. In March 2022, Plaintiff Poppens moved into the Branch Manager role for the Fort Wayne, Indiana branch of Wells Fargo Advisors.

35. After moving in the Branch Manager role, Plaintiff Poppens learned that Caldwell-Meeks hired Joel Coleman ("Coleman") (substantially younger, African American) for the Market Leader position over the entire state of Indiana.

36. Thereafter, Plaintiff Poppens reported directly to Coleman.

37. Coleman, in turn, reported directly to Caldwell-Meeks.

38. Shortly after moving into the Branch Manager role, Human Resources ("HR") informed Plaintiff Poppens that one of his subordinate employees ("GW") was under investigation for an incident that occurred prior to Plaintiff Poppens' start date as the Branch Manager.

39. HR interviewed Plaintiff Poppens regarding his knowledge of the incident, of which he had none given that he had just learned about it from HR.

40. HR did not direct Plaintiff Poppens to take any disciplinary action against GW. Plaintiff Poppens did not discuss the investigation with GW or anyone else, as he was informed by HR that the investigation was confidential.

41. On or around March 24, 2022, GW informed Plaintiff Poppens that Caldwell-Meeks terminated his employment.

42. Plaintiff Poppens was surprised by this as Caldwell-Meeks never discussed GW's termination with him even though Plaintiff Poppens was GW's direct supervisor. Plaintiff Poppens was entirely circumvented from the disciplinary process.

43. On May 24, 2022, Plaintiff Poppens arrived at the Fort Wayne branch where Coleman, unannounced, was waiting for Plaintiff Poppens.

44. Coleman terminated Plaintiff Poppens.

45. Plaintiff Poppens asked Coleman repeatedly why he was being terminated and Coleman declined to answer, only referring Plaintiff Poppens to HR.

46. The entire conversation lasted about five (5) minutes with Coleman declining to tell Plaintiff Poppens why he was terminated.

47. After thirty-three (33) years as a loyal employee of the Company, Plaintiff Poppens was both stunned and in a state of shock.

48. Afterwards, Coleman escorted Plaintiff Poppens to his office to turn in his keys and other belongings and instructed Plaintiff Poppens to immediately leave the office.

49. Plaintiff Poppens' personal belongings were shipped to him several weeks later.

50. Plaintiff Poppens made repeated calls to HR who declined to provide Plaintiff Poppens with a specific reason for his termination.

51. Plaintiff Poppens eventually received a call from a Wells Fargo attorney who advised him that he was terminated for "failure to meet expectations regarding the supervision of a direct report."

52. Plaintiff Poppens was provided no other detail.

53. Plaintiff Poppens was just months into his new Branch Manager role and had not received any negative feedback about his performance.

54. In addition, Wells Fargo has a prescribed, extensive disciplinary protocol that they are required to follow when an employee fails to meet expectations.

55. These procedures were not followed for Plaintiff Poppens.

56. Approximately three (3) months after Coleman terminated Plaintiff Poppens, he terminated Plaintiff Palonis.

57. Plaintiff Palonis is a sixty-two (62) year old Caucasian.

58. Plaintiff Palonis began working for Wells Fargo in December 2017 in the position of Branch Manager for Wells Fargo Advisors.

59. Plaintiff Palonis managed three (3) offices in the Indianapolis area for approximately one (1) year and then moved to the Anderson office to manage both the Anderson and Bloomington offices from 2018 to 2019.

60. In December 2019, Plaintiff Palonis moved to the Merrillville office, still in the role of Branch Manager for Wells Fargo Advisors and remained the Branch Manager of the Merrillville office until his termination on August 31, 2022.

61. From the beginning of his employment through approximately February 2022, Plaintiff Palonis reported directly to Plaintiff Poppens.

62. Beginning in or around March 2022, Plaintiff Palonis reported directly to Coleman.

63. In or around July 2021, Amanda Scheele ("Scheele"), the Operations Supervisor for Merrillville, South Bend and Fort Wayne needed to fill the position of Receptionist, Operations and Client Assistant ("CA") in the Merrillville office.

64. The individual in this position is the first interfacing position when clients or potential clients enter the branch. This individual is also responsible for opening the branch, answering the phone, and assisting financial advisors.

65. During the time that Plaintiff Palonis held the position of Branch Manager of the Merrillville office, the reporting structure in Wells Fargo Advisors' branches was unique.

7

66. Although Plaintiff Palonis was the Branch Manager over the entire office, he did not supervise the operations staff.

67. In addition, Plaintiff Palonis could not discipline or terminate the operations staff.

68. Operations staff was supervised by Scheele and Scheele was responsible for taking disciplinary action against the operations staff.

69. Four (4) individuals were interviewed for the CA position: an internal candidate and three (3) external candidates.

70. Scheele hired an external candidate ("JA") for the position. JA started in September 2021.

71. In the eleven (11) months that Plaintiff Palonis worked with JA, he reported multiple issues regarding her insubordinate behavior and performance to Scheele, Mike Rattigan ("Rattigan"), Scheele's supervisor, Human Resources, Coleman, and the compliance office.

72. Plaintiff Palonis had no authority to discipline or terminate JA. He could only continue to report the issues and concerns to a multitude of individuals with no resolution.

73. Plaintiff Palonis could not hire, fire, or discipline any operations staff.

74. On August 11, 2022, JA became hostile and threatening with another operations staff member, "JM".

75. That same day, Plaintiff Palonis made a report in the human resources system.

76. Towards the end of the day, Plaintiff Palonis heard yelling and left his office to find JA yelling at JM.

77. JA's hostile and threatening behavior towards her co-worker escalated to the point where Plaintiff Palonis asked her to leave. JA refused.

78. Given her threatening behavior towards her co-workers and her refusal to leave the branch, Plaintiff Palonis told JA that he would call the police. He then went to his office and called Rattigan, Scheele's supervisor, and told him about the situation.

79. Rattigan agreed the police were needed.

80. JA eventually left the office.

81. On August 12, 2022, everyone but JA reported to work.

82. On August 12, 2022, Plaintiff Palonis was sitting in JA's work area doing her job as she did not report to work.

83. Coleman arrived and told Plaintiff Palonis that until the "investigation" was complete, Plaintiff Palonis was on paid administrative leave.

84. It was not entirely clear what investigation Coleman was referring to.

85. On August 31, 2022, Coleman called Plaintiff Palonis and terminated his employment.

86. Wells Fargo did not follow Company progressive discipline policy before terminating Plaintiff Palonis.

87. Wells Fargo's prescribed, extensive disciplinary protocol that they are required to follow when an employee fails to meet expectations were not followed with Plaintiff Palonis.

88. Following the termination of Plaintiff Palonis, Wells Fargo changed its reporting structure so that Branch Managers have supervisory authority over operations staff.

89. Wells Fargo also terminated Berg following his medical leave.

90. Wells Fargo terminated Plaintiff Poppens and Plaintiff Palonis because of their age in violation of the ADEA and/or because of their race in violation of Title VII.

91. As a result of Well Fargo's unlawful employment practices, Plaintiffs have suffered and will continue to suffer economic damages as well as emotional distress and other compensatory damages.

92. Wells Fargo's unlawful employment practices were willful and done with malice or reckless indifference to Plaintiffs' federally protected rights.

93. Plaintiffs are entitled to recover reasonable attorneys' fees and costs.

## COUNT I: AGE DISCRIMINATION

94. All preceding paragraphs are incorporated herein by reference.

95. As set forth above, Wells Fargo engaged in intentional age discrimination against Plaintiff Palonis and Plaintiff Poppens in the terms and conditions of their employment in violation of the ADEA, including age-based disparate treatment.

96. Wells Fargo intentionally caused infringement on Plaintiff Palonis' and Plaintiff Poppens' rights pursuant to the ADEA.

97. As a result of Well Fargo's discriminatory acts, Plaintiffs have suffered and will continue to suffer monetary damages unless and until the Court grants relief.

98. Wells Fargo acted willfully or with reckless indifference to Plaintiffs' federally protected rights thereby entitling Plaintiffs to liquidated damages.

99. Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in this action.

## COUNT II: RACE DISCRIMINATION

100. All preceding paragraphs are incorporated herein by reference.

101. As set forth above, Wells Fargo engaged in intentional race discrimination against Plaintiff Palonis and Plaintiff Poppens in the terms and conditions of their employment in violation of Title VII including race-based disparate treatment.

102. Wells Fargo intentionally caused infringement on Plaintiff Palonis' and Plaintiff Poppens' rights pursuant to Title VII.

103. Wells Fargo's unlawful discriminatory acts cause Plaintiff Palonis and Plaintiff Poppens to suffer economic damages, including lost wages as well as emotional distress and physical distress.

104. Wells Fargo acted with malice and/or reckless indifference to Plaintiff Palonis' and Plaintiff Poppens' rights, entitling them to an award of punitive damages.

105. Wells Fargo is liable to Plaintiff Palonis and Plaintiff Poppens for back pay, emotional distress, and other compensatory damages, punitive damages, prejudgment interest, post judgement interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order:

A. Requiring Wells Fargo to reinstate Plaintiffs to their former positions or substantially equivalent positions;

B. Awarding all lost wages and benefits Plaintiffs have sustained or will sustain as a result of Wells Fargo's unlawful conduct;

C. Awarding front pay in an amount equal to the wages and benefits that Plaintiffs may reasonably be expected to lose after trial as a result of Wells Fargo's unlawful conduct should the Court determine that an order requiring reinstatement is not feasible or appropriate;

D. Awarding pre-judgment interest;

E. Awarding compensatory damages for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F. Awarding punitive damages for Wells Fargo's malicious and/or reckless conduct described above in amounts to be determined at trial;

G. Awarding liquidated damages in an amount to be determined at trial;

H. Awarding the costs maintaining this action, including an award of reasonable attorneys' fees; and

I. Awarding all other relief the Court deems necessary and proper in the public interest.

Dated this 23rd day of June 2023.

Respectfully submitted,

*s/Kimberly D. Jeselskis*
Kimberly D. Jeselskis, Attorney No. 23422-49
MacKenzie A. Watson, Attorney No. 36139-32
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Facsimile: (317) 220-6291
kjeselskis@jbjlegal.com
mwatson@jbjlegal.com

*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all triable issues.

Dated this 23rd day of June 2023.

Respectfully submitted,

*s/Kimberly D. Jeselskis*
Kimberly D. Jeselskis, Attorney No. 23422-49
MacKenzie A. Watson, Attorney No. 36139-32
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Facsimile: (317) 220-6291
kjeselskis@jbjlegal.com
mwatson@jbjlegal.com

*Counsel for Plaintiffs*